# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v.             ) | Crim. No. 08-236 |
| ) | |
| MICHAEL L. KARRER,   ) | |
| ) | |
| Defendant.      ) | |

## MEMORANDUM OPINION & ORDER

Pending before the court is a Motion to Suppress Evidence (Doc. 56), filed on behalf of defendant, Michael L. Karrer ("Karrer"). We have considered the Government's Response to the Defendant's Motion to Suppress (Doc. 59), Defendant's Reply Brief in Further Support of Motion to Suppress (Doc. 62), Defendant's Supplemental Brief in Further Support of the Motion to Suppress (Doc. 66), and Government's Supplemental Brief Regarding Defense Motion to Suppress (Doc. 67).

The three count indictment in this matter charges sexual exploitation of a minor, receipt of child pornography, and possession of child pornography. (Indictment, Doc. No. 16.)

On June 17, 2010 we conducted an evidentiary hearing on the Motion to Suppress. At the hearing all parties were represented by counsel and the following two individuals testified: 1) Donald Scott Lucas, a Pennsylvania State Trooper who participated in the search of the Karrer residence and 2) Glen K. Bard, a Pennsylvania State Trooper who applied for both warrants to search Karrer's property and conducted the interview in his home. No argument was heard.

For the reasons stated herein, we will deny the Motion to Suppress. Fed. R. Crim P.12(d).

1

## I. BACKGROUND

On May 9, 2008, Trooper Glen K. Bard of the Pennsylvania State Police received information from monitors at the children's website www.neopets.com ("Neopets") about an individual they had been investigating since November 2007. Neopets involves virtual pets who require care and feeding and is geared primarily towards children. The actor was registered on the site as a 37 year old male and was initially warned that his communications were "inappropriate." When the communications continued the account was terminated, but monitors found that in subsequent months the same actor opened several new accounts taking the persona of either a 15 year old boy or a 15 year old girl and contacted numerous individuals, all of whom identified themselves as under the age of 18. He asked girls if he could be their boyfriend, talked about being a nudist, requested their addresses, offered to send flowers, and inquired about the type of underwear they were wearing.

Neopets provided Trooper Bard the Internet Protocol Number ("IP Number") that was used to identify the multiple accounts as originating from the same computer and a MySpace page associated with the actor. Trooper Bard was able to use a photograph on the MySpace page to identify Karrer, with whom he was familiar from a previous investigation. (In that previous arrest, Karrer pleaded guilty on February 14, 2005 to corruption of minors and was sentenced to 2 years of probation). Under court order, the Internet Service Provider supplied account information for the IP Number and confirmed that the computer was located at Karrer's residence. Additionally, there were more than 30 cybertip referrals to the National Center for Missing and Exploited Children for inappropriate online conduct for one of Karrer's user names

2

as of December 2007.

Trooper Bard explained that Myspace, a social networking website, includes various visual forms of communication, including the ability to attach or link pictures, to link to other users, as well as the ability to communicate using avatars, email, and instant chatting.

On May 13, 2008, Trooper Bard obtained a warrant to search Karrer's residence. The warrant authorized the search and seizure of items including, "[a]ll computer internal and peripheral storage devices" and "any cellular phones... which can be used for the purpose of accessing the internet, chat programs, or email applications." Gov't Ex. 1. The warrant clearly identified the alleged violation as Unlawful Contact with a Minor, 18 Pa C.S. § 6318. Trooper Bard explained that he was trying to locate any communication, that was similar to what Neopets had reported; he hoped to be able to identify the people Karrer was communicating with and determine a contact age. A Probable Cause Affidavit accompanied the warrant, was noted on the face of the warrant as being attached thereto, and was referenced throughout to supplement subsections in the warrant with evidence uncovered in the investigation.

The government concedes that there was no probable cause to search the residence for child pornography. However, the language on page two of the warrant stated that, "items will be seized then later searched for evidence relating to the possession and/or distribution of *child pornography*" (italics added), instead of relating to Unlawful Contact with a Minor. Moreover, the affidavit refers to case law concerning staleness of evidence "pertaining to similar investigations," the majority of which cases involved the search for child pornography; presumably the staleness issue was presented because the investigation of Karrer dated back six

months to November 2007, when Neopets first noted inappropriate communications. According to the government, these two parts of the Affidavit and application were harmless ministerial errors that do not affect the warrant's validity.

The warrant was executed immediately. Upon entering the residence Trooper Bard first encountered Karrer's father, the homeowner, and provided him a copy of the search warrant. The defendant was then informed of the search, read the warrant, and was escorted to the kitchen by Trooper Bard while the other officers began their search in his bedroom. Within the first few moments of the search, Trooper Donald Lucas, who was searching Karrer's bedroom, identified a desktop computer, as well as a cellular phone.

Trooper Lucas testified that based upon his experience, he knew this phone – a Motorola K1M, --to be capable of text and multimedia communications, data transfers, email and internet access, and limited data storage that would be relevant to the investigation. He disconnected the computer and then flipped the phone open, navigated the menus, and accessed both the message and image files. He identified a photograph he suspected was child pornography. According to Lucas, he saw a grainy photograph that appeared to be fingers touching young female genitals. Because this could possibly be child pornography, which he knew would not be included in the search warrant, he immediately showed Trooper Bard. Trooper Bard was alarmed given the size of the objects in the image, which based upon his experience indicated a very small child. He was also concerned because the image could be evidence of a contact offense against a child, in addition to possible child pornography.

Trooper Bard took the cellular telephone downstairs and asked Karrer if he would speak

with him. No further analysis of the cellular telephone was conducted. Karrer was Mirandized a second time, even though he was not in custody, out of an abundance of caution. He indicated he understood his rights and said he wanted to talk to them.

The officers then conducted a videotaped interview with Karrer during which he admitted to taking the sexually explicit picture of a minor child. When shown the picture, the Karrer identified the child in the image as well as himself as the actor. Karrer then admitted to having some other child pornography in his home. He stated that there would be additional pictures of another minor on a compact disk in his bedroom and signed a consent form for officers to search. Trooper Bard repeatedly stated that Karrer did not need to speak with them or consent to the search, and that he would be applying for another search warrant because child pornography was outside the scope of the original search warrant. Trooper Bard wanted to inspect the compact disk immediately on scene, and obtained consent to inspect both the compact disk and the computer system.

Trooper Bard described the defendant as coherent, oriented to time and place, although nervous. Karrer appeared to understand questions and provided suitable answers. The troopers did not raise their voices, were polite, and tried to calm him. There was no evidence of coercion.

The same day Trooper Bard obtained a second warrant to search Karrer's cellular phone and computer system for child pornography. Magistrate Welsh signed the second search warrant at 1:40 p.m. on May 13, 2008. The second warrant identified the alleged violation as Title 18 section 6312, sexual abuse of children.

A forensic review was later conducted on both devices.

Troopers Bard and Lucas explained that it is common for documents and files related to conversations to have an image or picture component, specifically with cell phones. The system used to send pictures and videos, known as the Multimedia Message System ("MMS") "is a system by which a user can send a file that contains text and has an attached image or an attached video or an attached audio file from one phone to another, or even from one phone to a computer or from a computer to a phone." Tr. at 7-8. MMS messages are a form of cell phone communication that may be visual, audio, or video, and may contain many more characters than regular "texting." Because images and videos attached to communications or messages can be stored on the cellular telephone, remnants of internet based communications, such as the Neopets communications, are often preserved as image files. Trooper Lucas further explained that when these image files are attached to a message file and saved, they are saved among other images or pictures in the cellular phone. Additional, in-depth analysis by a forensic examiner is often required to trace the origins of an image, i.e. whether an image was sent by a computer or taken by a cell phone.

Karrer asks that we grant the motion to suppress all evidence and statements from the search, as well as all derivative evidence therefrom.

## II. DISCUSSION

Karrer argues the inconsistent language in the warrant shows the purpose of the search was child pornography and not unlawful contact with a minor, and that there was not enough evidence to establish probable cause for either offense. Alternatively, he argues that if the court were to find probable cause the evidence should still be suppressed because the warrant was so

lacking in particularity that it should be considered unconstitutionally general or overly broad. Finally, Karrer contends that Trooper Bard as the affiant and executing officer cannot rely on the good faith exception to the warrant requirement, especially where the issuing magistrate abandoned his judicial role in authorizing a warrant so lacking in probable cause.

The Fourth Amendment to the United States Constitution provides that "no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularity describing the place to be searched, and the persons or things to be seized." U.S. Const. Amend. IV. A magistrate must determine that there is a "fair probability that . . . evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). The Fourth Amendment prohibits a general warrant and requires sufficient particularity "no broader than the probable cause on which it is based." Boyd v. United States, 116 U.S. 616, 625 (1886); United States v. Weber, 923 F.2d 1338, 1342 (9th Cir. 1990). Evidence seized in violation of the Fourth Amendment will be suppressed as "fruits of the poisonous tree." Wong Sun v. United States, 371 U.S. 471, 484 (1963).

For the reasons stated herein, we find the warrant and supporting affidavit established probable cause to search Karrer's residence for a violation of section 6318 Unlawful Contact with a Minor, and described the location and items to be seized with sufficient particularity under the circumstances. Moroever, we will deny to the Motion to Suppress based on the good faith exception to the warrant requirement outlined in United States v. Leon since the troopers acted in objectively reasonable reliance on a warrant issued by a magistrate. 468 U.S. 897 (1984).

## A. Probable Cause

Karrer argues the warrant was not clear as to the offense officers were investigating and that there was not probable cause for a search of his residence. Karrer admits that his communications with minors on Neopets may have been unseemly, but his conversations never referenced or alluded to a sex act or illustrated that he was contacting them with the purpose to engage in a "prohibited activity." He concludes that without evidence of said purpose there was not probable cause to support a search for a violation of section 6318. He further argues that the original warrant could not have established probable cause to seize and search for child pornography because there was not even a mention of it in the affidavit.

The test for the sufficiency of a warrant's probable cause is whether there was a "substantial basis" for the magistrate to conclude that a search would uncover evidence of wrongdoing. Gates, 462 U.S. at 236. Reviewing courts should pay great deference to this decision and, "the resolution of doubtful or marginal cases should be largely determined by the preference to be accorded to warrants." Id. at 236-7 (quoting United States v. Ventresca, 308 U.S. 102, 109 (1965)); see also United States v. Jones, 994 F.2d 1051, 1057 (3d Cir. 1993) (recognizing that while a different magistrate may have found the affidavit insufficient to support a warrant, the reviewing court was constrained to determine only whether the affidavit provided a substantial basis for the decision the magistrate judge actually made). The affidavit in support of the warrant does not need to provide enough support to prove a prima facie case, or even enough to arrest the actor. It only needs to establish a fair probability that a crime had been

committed and that evidence could be found in the particular place. Gates, 462 U.S. at 238.

The original warrant in this case was filed for a search related to a violation of 18 Pa. C.S. § 6318 which states, in pertinent part:

> **(a) Offense defined.--** A person commits an offense if he is intentionally in contact with a minor, or a law enforcement officer acting in the performance of his duties who has assumed the identity of a minor, for the purpose of engaging in an activity prohibited under any of the following, and either the person initiating the contact or the person being contacted is within this Commonwealth:
> (1) Any of the offenses enumerated in Chapter 31 (relating to sexual offenses).
> (2) Open lewdness as defined in section 5901 (relating to open lewdness).
> (3) Prostitution as defined in section 5902 (relating to prostitution and related offenses).
> (4) Obscene and other sexual materials and performances as defined in section 5903 (relating to obscene and other sexual materials and performances).
> (5) Sexual abuse of children as defined in section 6312 (relating to sexual abuse of children).
> (6) Sexual exploitation of children as defined in section 6320 (relating to sexual exploitation of children).

Concerning the "contact" element of the statute, the Pennsylvania Superior Court has clarified that phrase, stating: "[e]ven though the statute is titled 'unlawful contact with a minor,' it is best understood as 'unlawful communication with a minor.'" Commonwealth v. Rose, 960 A.2d 149, 151 (Pa. Super. 2008). Therefore, the crime is completed at the moment communication occurs with the purpose of engaging in a prohibited activity and the actor need not take additional affirmative steps to make physical contact. Commonwealth v. Morgan, 913 A.2d 906, 910 (Pa. Super. 2006). An actor's purpose may be inferred by words, gestures, and

actions that illustrate his intent. See Commonwealth v. Oliver, 946 A.2d 1111, 1114 (Pa. Super. 2008) (finding "words and gestures" illustrated the defendant's purpose to engage in oral sex with a minor); see also Commonwealth v. Crabhill, 926 A.2d 488, 491 (Pa. Super. 2007) (holding that descriptions of sex acts, coupled with instructions to a meeting place established the defendant's purpose to engage in prohibited acts). In Crabhill, the court held that the trial evidence was sufficient to support conviction for criminal attempt at unlawful contact with a minor based upon defendant's sexually-explicit communications to law enforcement officer posing as 12-year-old girl in internet chat room sting operation. The court noted that the mens rea element of offense was established by the defendant's admission that he believed he was communicating with 12-year-old girl, the content of his e-mails over 10-day period, and his substantial steps in attempting to meet purported minor for sexual contact. Id.

We find the warrant and supporting affidavit provided a "substantial basis" for the magistrate to conclude that a search of the residence would uncover evidence of unlawful contact with a minor. Karrer mistakenly concludes that since his actions are not as overtly sexual as the defendants in Oliver and Crabhill his conduct did not clearly show a purpose to engage in an activity prohibited by section 6318, and that consequently, there was no probable cause to search. However, both cases are examples of when the court has found a defendant's purpose was to engage in an activity prohibited by section 6318, but a defendant's conduct need not conform to these examples. Various activities ranging from lewdness to sexual exploitation of a minor are prohibited by section 6318, requiring a case by case analysis to establish purpose. Furthermore, since probable cause does not require proof of each element of a crime there could

10

be a substantial basis on which the magistrate could decide to issue a warrant to search for evidence of a violation of section 6318, even if at the time the purpose to engage in a prohibited activity could not be proven.

The information contained in the affidavit was enough to establish the requisite fair probability that evidence of unlawful contact with a minor would be found at the residence. Trooper Bard outlined the information provided to him by Neopets, including the multiple personas Karrer assumed in order to communicate with underage girls and examples of statements and conversations that took place on the website. Beyond personally recognizing Karrer from the MySpace page, he verified through the Internet Service Provider that the computer with the IP Number provided by Neopets was located at his residence.

Additionally, we do not believe the warrant is invalid for a lack of probable cause related to the offense of possession or distribution of child pornography. The phrase in the warrant referencing items to be seized in relation to these violations was misplaced as a result of error and does not alter the violation sought by the warrant. We come to this conclusion by reading the warrant in conjunction with the incorporated affidavit. For an affidavit to be incorporated with the warrant the affiant's intent for the two documents to be read together must be clear. United States v. Tracey, 597 F.3d 140, 148 (3d Cir. 2010) (holding it was not enough for the affiant to check a box that the affidavit would be attached and the number of pages, rather, "if [the officer] intended to incorporate the affidavit into the description of items to be seized, he could have written 'see affidavit,' 'as further described in the affidavit,' or any other words of incorporation."); see also United States v. Johnson, 690 F.2d 60, 64-65 (3d Cir. 1982) ("[w]hen a

warrant is accompanied by an affidavit that is incorporated by reference, the affidavit may be used in construing the scope of the warrant"). Once the affidavit is determined to be incorporated it may be used to facilitate the reading of the warrant as a whole. Groh v.Ramirez, 540 U.S. 551, 557-58 (2004) ("[m]ost Courts of Appeal have held that a court may construe a warrant with reference to a supporting application or affidavit if the warrant uses appropriate words of incorporation, and if the supporting document accompanies the warrant."); see also Johnson, 690 F.2d at 64.

In this case, the affidavit was clearly incorporated with the warrant. Trooper Bard noted numerous times, "[t]he reasons these items are listed to be seized are outlined in the affidavit of this search warrant and incorporated hereto by reference." (Exhibit A). Karrer has recognized that the affidavit was incorporated by Trooper Bard and should be read in conjunction, but concludes incorrectly that the reading of the two documents as a whole supports the position that there was not probable cause to search his home. Supplemental Brief in Further Support of the Motion to Dismiss, p. 2. "Despite the fact that the [w]arrant explicitly incorporates the [a]ffidavit, the government insists that the [w]arrant and the [a]ffidavit should be read as distinct documents for probable cause purposes." Id. To the contrary, the government argues that reading the two documents together illustrates that the reference to child pornography was misplaced.

We agree. The original search warrant did not seek authorization for a search for items relating to child pornography. Unlawful contact with a minor was the violation noted on the face of the warrant. The affidavit included references to the investigation conducted by Trooper Bard

12

and Neopets, including portions of conversations Karrer allegedly had with minors on the site. There was no additional information in either document purporting to establish probable cause to search for child pornography. In a clause similar to the one misplaced in the warrant the affidavit states,

> [b]ased upon the foregoing, there is probable cause to believe that the files and documents identified and related documents pertaining to the conversations between the suspect, as well as possible conversations between the suspect and other children less than 18 years of age, in violation of Pennsylvania Crimes Code Section 6318.

(Exhibit A). A common sense reading of the application and affidavit leads us to conclude that despite ministerial errors, the information provided in the warrant and incorporated affidavit clearly show probable cause that was a "sufficient basis" for the magistrate to determine there would be evidence related to a violation of section 6318 Unlawful Contact with a Minor.

### B. Particularity

Mr. Karrer argues that should the court find probable cause for issuance of the warrant, evidence and statements should nonetheless be suppressed because an unconstitutionally general or overly broad search was authorized. He argues that by identifying "all computer internal and peripheral storage devices," as items to be searched or seized without greater particularity, the warrant allowed the officers to view limitless files that were outside the ambit of probable cause. Additionally, Mr. Karrer alleges that the inclusion of "any cellular phones... which can be used for the purpose of accessing the internet, chat programs, or email applications," allowed the officers to search areas where evidence of the crime alleged could not have been located.

The manifest purpose of the particularity requirement is to ensure against general

searches by limiting authorization to search specific areas and things. Maryland v. Garrison, U.S. 79, 84 (1987). A search warrant is general when it authorizes a search where there is no probable cause and is tantamount to exploratory rummaging in search of criminal evidence. Id.; see also United States v. Leveto, 540 F.3d 200, 211 (3d Cir. 2008). A general warrant is invalid as a matter of law. United States v. $92,420.57, 307 F.3d 137, 149 (3d Cir. 2002). A warrant that is overly broad describes, "in both specific and inclusive generic terms what is to be seized," authorizing a search that exceeds the ambit of probable cause. United States v. Christine, 687 U.S. F.2d 749 (3d Cir. 1982); see also United States v. Zimmerman, 277 F.3d 426, 436-7 (3d Cir. 2002). Overly broad warrants may be redacted to remove unsupported severable clauses or phrases. Id.

In support of his position, Mr. Karrer relies partially on United States v. Wecht where the court found a warrant to be overly broad when it authorized the seizure of "[a]ny and all computer software and hardware, ... computer disks, [and] disk drives...." 619 F.Supp. 2d 213, 241-52 (W.D. Pa. 2009). The affidavit alleged the defendant was under investigation for embezzlement and theft, and the officers sought to search the laptop computer of an associate (not the defendant himself) because it would contain business files she had prepared for him and "an abundance of incriminating evidence." The question the court addressed was not whether there was probable cause to search the laptop, but rather if the probable cause was coextensive with all the computer's contents. Id. at 242. The court noted the fact that the individual took the laptop home every night, and that she and potentially others could have information of a personal nature stored on it. Id. at 243. The court determined that:

14

> [K]nowing that a computer has been utilized extensively for a specific illicit purpose is not the same as knowing that it has *never* been used for other, irrelevant purposes. Here, the reasonable probability that the laptop would contain data or files irrelevant to the Government's investigation is not unduly speculative or far-fetched – it arises naturally in light of the characteristics inherent to computers – namely, their capacity to store tremendous amounts of information, spanning many years, in a variety of different formats and their capability of performing numerous functions... [b]ecause computers can hold so much information touching on many different areas of a person's life, there is a greater potential for the "intermingling" of documents and a consequent invasion of privacy when police execute a search for evidence on a computer...

Id. at 244. (citing United States v. Riccardi, 405 F.3d 852, 862 (10th Cir. 2005)). The court opined that when the government seeks to seize the information stored on a computer, "that underlying information must be identified with particularity and its seizure independently supported by probable cause... [and must] state with reasonable particularity which files it [is] authorizing the Government to seize." Id. at 247-8.

That is not what happened here. The magistrate did not issue a general warrant that authorized exploratory rummaging. The warrant did not vest the executing officers with unbridled discretion to search for and seize whatever they wished. Christine, 687 F.2d at 753. It was specific in that it listed devices, such as Mr. Karrer's computer and internet capable cellular phones, with probable cause that evidence of unlawful communications with a minor could have taken place on each. Admittedly, Trooper Bard's understanding of the amount of unrelated data that could be found on these devices could possibly have enabled him to list with greater particularity the types of files to be searched or areas of the device in which evidence could have been located. Nonetheless, as Judge McLaughlin noted in the Wecht decision:

15

> courts have upheld the generic seizure of computer equipment where the computer is being used as an instrumentality of crime, as in cases involving the use of computers to transmit or store obscene pornography. See, e.g., United States v. Upham, 168 F.3d at 535 (upholding the "generic" seizure of computer equipment in case involving the possession and interstate transportation of child pornography images); United States v. Lacy, 119 F.3d 742, 746 (9th Cir.1997) (upholding blanket seizure of defendant's entire computer system in investigation relating to defendant's possession of child pornography); Davis v. Gracey, 111 F.3d 1472, 1480 (10th Cir.1997) (upholding the seizure of computer "equipment" used to store obscene pornography). The logic behind this result is that the investigating agents cannot know in advance which components of the system will contain the contraband and therefore, it is reasonable for agents to seize any components in which the contraband may reasonably be found. See, e.g., Upham, 168 F.3d at 535 ("A sufficient chance of finding some needles in the computer haystack was established by the probable cause showing in the warrant application."); Lacy, 119 F.3d at 746 ("The government knew Lacy had downloaded computerized visual depictions of child pornography, but did not know whether the images were stored on the hard drive or on one or more of his many computer disks .... there was no way to specify what hardware and software had to be seized in order to retrieve the images accurately"). See also United States v. Hill, 459 F.3d 966, 973 (9th Cir.2006) (noting that "it is impossible to tell what a computer storage medium contains just by looking at it.").

Wecht, 619 F.Supp.2d 213 at 247.

In this case, agents did not rely on the original warrant to seize child pornography. There was sufficient probable cause to believe that Karrer's computer and cell phone were used as an instrumentality of the crime of unlawful contact with a minor. While lawfully in the residence in search of digital communications that would evidence this crime, the troopers discovered images of child pornography on Karrer's cellular telephone. They then verified its presence through an interview with the defendant, sought his consent to examine any computer and storage media for child pornography and obtained a second search warrant to authorize a full forensic analysis of the computer and storage media for child pornography.

Nevertheless, we note that even if such evidence was seized pursuant to an overly broad

16

warrant, it need not be suppressed if the good faith exception applies. United States v. $92,420.57, 307 F.3d 137, 149 (3d Cir. 2002). As we will discuss below, it was objectively reasonable for the executing officers in this case to believe that the warrant properly authorized a search for and seizure of the categories of computer software and hardware at issue.

## C. Plain View

The cellular telephone images were discovered in the course of a lawful search for evidence of any improper communications between Karrer and children. The alleged internet communications described in the warrant and affidavit could have been conducted through Karrer's cellular telephone, and evidence could logically be stored there. We note that at the hearing, the Court viewed the image found on Karrer's cellular telephone. Although it was grainy and small, the image clearly depicts the genitalia of a very small girl, and it is immediately apparent that it is child pornography. United States v. Menon, 24 F.2d 550 (3d Cir. 1994). The troopers sought a second search warrant. This is certainly the course of action that courts recommend. United States v. Carey, 172 F.3d 1268, 1276 (10th Cir. 1999).

## D. The Good Faith Exception

We find that the Troopers acted in objectively reasonable reliance on the magistrate's issuance of the warrant, and thus the good faith exception to the warrant requirement applies. United States v. Leon, 468 U.S. 897, 922 (1984). The test for whether the good faith exception applies is, "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." United States v. Loy, 191 F.3d 360, 367 (3d Cir. 1999). The exception requires a sincerely held and objectively reasonable belief that the warrant

is based on a valid application of the law and all the known facts. United States v. Reilly, 76 F.3d 1271, 1273 (2d Cir 1996). Courts generally exclude evidence seized as the result of an unconstitutional search or seizure to deter police conduct that violates the constitutional rights of citizens, but considering the court's preference for officers to obtain warrants there is marginal benefit when probative evidence is suppressed after the officer obtains a warrant in good faith. Leon, 468 U.S. at 919.

There are four situations where an officer's reliance on a warrant would not be reasonable and would not trigger the good faith exception: (1) where the magistrate issued the warrant in reliance on a deliberately or recklessly false affidavit; (2) where the magistrate abandoned his or her judicial role and failed to perform his or her neutral and detached function; (3) where the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or (4) where the warrant was so facially deficient that it failed to particularize the place to be searched or the things to be seized. Zimmerman, 277 F.3d at 436-7. The Third Circuit has found the reliance upon a warrant unreasonable where officers can, "search first and explain where and for what they were looking later." United States v. Ritter, 416 F.3d 256, 278 (3d Cir. 2005), citing United States v. $92,422.57, 307 F.3d 137, 148-49 (3d Cir. 2002).

Karrer relies on Zimmerman to argue that the good faith exception does not apply in this case because either the magistrate abandoned his judicial role in approving the warrant or Trooper Bard as the affiant and executing officer could not have reasonably relied upon it as issued. In Zimmerman, the court determined that the good faith exception would not apply to a

18

warrant that authorized the search of the defendant's home for child pornography without the requisite indicia of probable cause. 277 F.3d at 436-38. The court found it "somewhat disingenuous" that an affiant who went to the magistrate with a paltry showing of probable cause, gained authorization for the search, and then executed the warrant could subsequently claim it was the magistrate who erred. Id. at 438.

We do not find it dispositive that Trooper Bard was both the affiant and executing officer, and furthermore, we find that any errors in the warrant did not reach the level of unreasonableness contemplated in Zimmerman. While the warrant contained ministerial mistakes and could have been more specific, the errors were not so egregious as to evidence a magistrate who had abandoned his judicial role or so obvious that an ordinary officer should have known not to rely upon the warrant as issued. We are not convinced the officers in this case were given *cart blanche* to search and find it unreasonable to conclude the officers should have "recognized, questioned, and correctly applied the nuances" of computer and cellular phone search particularity despite the magistrate's finding of probable cause. See Ritter, 416 F.3d at 278.

When the officers entered Karrer's home they located the items listed in the search warrant, including Karrer's computer and cellular phone. The executing officers had a good faith belief that they had a valid warrant for the residence that they searched, and that the warrant was supported by probable cause. They reasonably believed the images contained on the cell phone were within the scope of the original warrant, based on their expert knowledge of the capacity of the particular cellular telephone to communicate via the internet with text and

images. The uncontroverted testimony at the hearing established that Trooper Lucas immediately ended his examination of the cellular phone when he believed he had found evidence relating to child pornography. The transcript of the interview with Karrer includes repeated statements by both troopers that they planned to apply for a second warrant because child pornography was beyond the scope of the original warrant.1 Despite being both the affiant and one of the executing officers, Trooper Bard, along with the other officers, acted in reasonable reliance on the warrant that had been authorized by a magistrate. Since there is little deterrent affect in suppressing evidence officers found while searching within the parameters of such a warrant, we will apply the good faith exception in this case.

The Motion to Suppress is denied.

## ORDER

AND NOW, to-wit, this 23rd day of September, 2010, in accordance with the foregoing Memorandum Opinion, it is hereby ORDERED, ADJUDGED and DECREED that the defendant's "Motion to Suppress Evidence" (Doc. 56) be and the same is DENIED.

IT IS FURTHER ORDERED THAT the time lapse between the filing of the motion to suppress and the entry of this order shall be deemed excludable delay under the Speedy Trial Act, 18 U.S.C. §§ 3161, *et. seq.*

IT IS FURTHER ORDERED THAT a trial in this matter shall commence on Tuesday October 12, 2010 at 10:00 a.m.

Maurice B. Cohill, Jr.
Senior United States District Court Judge

cc: record counsel

---

1It is clear that Karrer voluntarily consented to the forensic examination of his computer and to the review of the compact disk.